UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GEORGE JOHNSON, *pro se,*                :
                                         :
                    Petitioner,          :          **MEMORANDUM AND ORDER**
                                         :          05-CV-3563 (DLI)(LB)
          -against-                      :
                                         :
ROBERT ERCOLE, Superintendent            :
of Green Haven Correctional Facility,    :
                                         :
                    Respondent.          :
---------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On November 2, 2001, George Johnson ("Petitioner" or "Johnson") was convicted in New York State Supreme Court, Queens County, after a trial by jury, of Murder in the Second Degree (intentional murder), N.Y. Penal Law ("N.Y.P.L.") § 125.25, Criminal Possession of a Weapon in the Second and Third Degrees, N.Y.P.L. §§ 256.03 and 265.03, and Promoting Prostitution in the Second and Third Degrees, N.Y.P.L. §§ 230.30 and 230.25. On November 19, 2001, Johnson was sentenced by Justice Roger Rosengarten to concurrent indeterminate prison terms of twenty-five years to life for Murder in the Second Degree, from seven and one-half to fifteen years for Criminal Possession of a Weapon in the Second Degree, from three and one-half years to seven years for Criminal Possession of a Weapon in the Third Degree, and from two and one-third to seven years for both Promoting Prostitution in the Second Degree and Promoting Prostitution in the Third Degree. The sentences for promoting prostitution were to run concurrently with each other, but consecutively to the sentences for murder and weapon possession. The Appellate Division, Second Department, unanimously affirmed Petitioner's conviction on January 26, 2004. *People v. Johnson*, 3 A.D.3d 581, 770 N.Y.S.2d 659 (2d Dep't 2004). The New York Court of Appeals denied

1

Petitioner's application for leave to appeal on April 20, 2004. *People v. Johnson,* 2 N.Y.3d 763, 811

N.E.2d 43, 778 N.Y.S.2d 781(2004).

Petitioner challenges his conviction through the instant petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, on the ground that Petitioner was denied a fair trial due to

prosecutorial misconduct. For the reasons set forth below, the petition is denied.

## I.     Facts

Petitioner, a self professed "pimp," had seven prostitutes working for him in July 1999. (Tr.

1263, 1331).[1] On July 26, 1999, Emilio Martinez, who transported Petitioner's prostitutes in a van,

picked up Petitioner and several prostitutes and brought them to 23rd Street in Long Island City,

Queens.     Petitioner and the prostitutes were dropped off around 11 p.m.     (Tr. 655).     At

approximately 1:30 a.m., Petitioner returned to the van and told Martinez that one of the prostitutes

"had a problem." (Tr. 655, 1288). "Petit," one of Petitioner's prostitutes, had called Petitioner from

a car service garage located at 10-14 47th Road in Long Island City. (Tr. 1224-1226). Petit told

Petitioner that she had accidently gotten into the car of a man who sodomized her one week earlier,

and, although she had escaped, the man was looking for her. (Tr. 1289). Martinez and Petitioner

drove to meet Petit. On the way over, Martinez gave Petitioner a loaded gun. (Tr. 1293).

Upon arriving at 10-14 47th Road in Queens, Petitioner spoke with Petit. (Tr. 658, 768-769).

Joseph LaCove, employee of the car service, was standing with Petit. (Tr. 1290, 1293). LaCove and

Petit pointed to a nearby jeep, which was occupied, and explained that the man looking for Petit was

in that vehicle. (Tr. 664-65). Petitioner and Petit got in Martinez's van. The jeep approached and

---

[1]      "Tr." referres to the transcript of the trial on October 15, 16, 17, 18, 22, 23, 24,
25, 29, 30, 31 and November 1 and 2, 2001.

then drove past the van. Petitioner exited the van and ran down the street toward the jeep. (Tr. 670-672). Petitioner caught up with the Jeep when it stopped at a red light at11th Street and 47th Road. He walked up to the passenger side of the jeep, exchanged words with the driver, and then shot the driver three times. The final shot pierced the bridge of the victim's nose. (Tr. 680-683). Petitioner returned to the van and told Martinez and Petit that he had shot the driver of the jeep in the leg. (Tr. 686). Petitioner asked Petit to call LaCove to tell him not to tell anyone about what he saw. (Tr. 689-93). Eventually, Petitioner returned to his home. Martinez and Petit picked up the other prostitutes and drove them to the Bronx to work for the rest of the evening. (Tr. 695-698). The driver of the jeep, Brandon Brooks, an off-duty New York City Firefighter, was dead on arrival at Elmhurst Hospital. (Tr. 593-598).

In the early morning hours of July 27, 1999, the police apprehended Martinez in connection with the murder. (Tr. 701). Martinez cooperated with the police and lead police to Petitioner (702-703). Petitioner and Petit were arrested at their home on July 28, 1999 at 6:00 a.m. (Tr. 912-918). The home was searched, pursuant to a warrant, and the murder weapon was recovered. (Tr. 964-972). Petitioner and Petit, along with several other of Petitioner's prostitutes, were transported to the 108th Precinct to be interviewed. (Tr. 1127-1128). Petitioner waived his *Miranda* rights, answered the detectives' questions, and provided two written statements and a video confession. (Tr. 1135-37, 1197-1204). The Detectives further learned that Petit was fifteen years old. (Tr. 1129).

According to Petitioner, his shooting of Brooks was in self defense or, alternatively, was in reaction to a severe emotional disturbance. One week earlier, on July 19, 1999, Petit told Petitioner that she had been raped and sodomized by Brooks. (Tr. 1272-1274). Petitioner saw Brooks's jeep

after the rape, but was unable to catch it. (Tr. 1279-1280). Petit and Petitioner did not report the rape, but did call the police to report that there was a man in a jeep with a gun. (Tr. 1277-1281). Earlier in the evening of July 26, 1999, Brooks almost ran over Petitioner with his jeep as he crossed the street, leading to a verbal altercation. (Tr. 1286-1288). Brooks' boldness in the earlier altercation lead Petitioner to believe that Brooks had a gun. (Tr, 1297-1298).

*Procedural History*

The case was tried for thirteen days from October 15 through November 2, 2001. After Petitioner was convicted and sentenced, Petitioner, assisted by counsel, appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, Second Department. The grounds for the appeal were based on the prosecutor's alleged "pervasive misconduct [] includ[ing] expressly appealing to Catholic jurors and explicitly bringing his own Catholic faith into the case, inflaming the emotions of the jurors, arousing sympathy for the victim, demonizing appellant, denigrating defense counsel and making himself an unsworn witness." The Appellate Division, Second Department affirmed the judgment of conviction on January 26, 2004. *People v. Johnson*, 3 A.D.3d 581, 770 N.Y.S.2d 659 (2d Dep't 2004). The court held that, "[c]ontrary to the defendant's contention, questions and remarks by the prosecutor during voir dire, opening, and cross examination were fair comment on the evidence, or within the bounds of permissible rhetoric." *Id.* The court also noted that the prosecutor's invocation of religion, while "improper" was "harmless in light of the overwhelming proof of the defendant's guilt." *Id.* Finally, the court found the prosecutor's other comments on summation did not constitute misconduct. *Id.* The New York Court of Appeals denied petitioner's application for leave to appeal on April 20, 2004. *People v. Johnson,* 2 N.Y.3d 763, 811 N.E.2d 43, 778 N.Y.S.2d 781(2004). No petition for certiorari to the Supreme

Court of the United States was made.  The instant Petition was filed on July 15, 2005.[2]

## II.    Discussion

*Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where claims

in state court were "adjudicated on the merits," the federal district court may grant a petition for a

writ of habeas corpus only upon a finding that the state court proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is "contrary to" federal law "if the state court arrives

at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)

(O'Connor, J., concurring and writing for the majority).  Habeas relief is available under the

"unreasonable determination" clause "if the state court identifies the correct governing principle

---

[2]        After the conclusion of direct state court review, a petitioner is entitled 90 days within which to petition the United States Supreme Court for certiorari. which the Petitioner declined to do in this case. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  The instant petition was filed on July 15, 2005, nearly one year and 90 days after the conclusion of direct review.  Thus, the petition may be untimely pursuant to 28 U.S.C. § 2244(d)(1)(A).  However, because the respondent has not raised this defense, and "before acting on its own initiative [to dismiss an untimely habeas petition], a court must accord the parties fair notice and an opportunity to present their positions" the court declines to dismiss the petition *sua sponte*. *Day v. McDonough*, 126 S.Ct. 1675, 1683, 164 L.Ed.2d 376 (2006).  Rather, the court will consider the petition on its merits.

from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. In reviewing the state court decision, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### *Petitioner's Prosecutorial Misconduct Claims*

Upon a thorough review of the trial record and of Petitioner's direct appeals, the court finds that the state courts's decision denying Petitioner's prosecutorial misconduct claims is not contrary to, nor does it involve an unreasonable application of Supreme Court law. *See Funderbird-Day v. Artuz*, 97 CV 7786, 2002 WL 31427345, *2 (S.D.N.Y., Oct. 29, 2002) (petitioner failed to show that the state court determination with respect to his prosecutorial misconduct claim was either "contrary to" or involved an "unreasonable application of" clearly established federal law).

As a matter of clearly established federal law, in order to grant relief on a habeas corpus petition claiming prosecutorial misconduct, the court would have to find that "the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998); *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) ("it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'"). The three factors a court considers when determining whether actual and substantial

prejudice has occurred, so as to create due process violation, are "(1) the severity of the misconduct,

(2) the nature of curative measures taken to remedy the prejudice, if any, and (3) the certainty of the

conviction absent the improper conduct." *Bentley v. Scully,* 41 F.3d 818, 823 (2d Cir. 1994) (internal

quotation marks and citation omitted).

Petitioner alleges several instances of prosecutorial misconduct, which can be grouped as

follows: (1) the prosecutor appealed to the jury's religious beliefs; (2) the prosecutor inflamed the

emotions of the jury by reminding the jury that the victim was a New York City firefighter; (3) the

prosecutor demonized the Petitioner by referencing his work as a "pimp;" (4) the prosecutor made

himself an unsworn witness by commenting on the lifestyle of New York City firefighters and the

lifestyle of "pimps." The court finds that the prosecutor's invocation of his Catholic faith, and

comments to the jury about the victim and Petitioner were improper. However, none of the conduct

rises to the level of a constitutional violation.

In the first instance, the prosecutor's conduct was not so egregious as to infect the trial with

unfairness. *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1998) ("[t]he cumulative effect of the

challenged statements . . . was not so inflammatory or egregious as to require a finding of substantial

prejudice."). Petitioner was indeed a self professed "pimp" and the victim was, in fact, firefighter.

Similarly, the prosecutor's invocation of religion was merely a rhetorical flourish, and did not place

the jury in the position of choosing between their religious beliefs and the Petitioner's innocence.

This is not a case where the prosecutor misconstrued a constitutional right, such as, for example,

implying that invoking the Fifth Amendment right against self incrimination is a sign of guilt. *See*

*e.g. Floyd v. Meachum*, 907 F.2d 347, 353-355 (2d Cir. 1990).

Second, the court sustained defense objections, struck the objectionable comments by the prosecution, and gave curative instructions to the jury when necessary, to remedy any possible prejudice. The trial judge fully instructed the jury on what evidence to consider during deliberations. (Tr. 1333, 1357, 1435, 1597-1647); *Pretlow v. Lord*, 03 CV 2547, 2005 WL 1073609, *3 (E.D.N.Y. Apr 29, 2005)(no prosecutorial misconduct were the trial judge sustained objections to improper questions). Moreover, prior to the prosecutor's summation, the trial judge reminded the jury that "nothing that any of the lawyers say or nothing that I say is evidence in the case." (Tr. 1566); *Urena v. Phillips*, 04 CV 5587, 2006 WL 38951, *5 (E.D.N.Y. Jan. 6, 2006). The prosecutor's summation, although boisterous, was not beyond the bounds of propriety and was, in part, a response to arguments make by defense counsel in his summation. *See Darden*, 477 U.S. at 181-182 (prosecutor's summation did not render trial fundamentally unfair where prosecutor did not manipulate or misstate the evidence, and comments were in part invited by or responsive to the summation of the defense).

The court's determination that the prosecutor's conduct did not violate petitioner's due process rights is consistant with other decisions in within the Second Circuit. *See, e.g. U.S. v. Resto,* 824 F.2d 210, 212 (2d Cir. 1987) (denigrating the defense counsel by calling specific defense tactics "slick bits" and "slyness" and accusing defense counsel of "sleight-of-hand" not prosecutorial misconduct); *Gary v. Conway*, 03 CV 0480, 2006 WL 3290149, *13 (N.D.N.Y. Nov. 13, 2006) (no prosecutorial misconduct where prosecutor became an unsworn witness as to facts for which there was no evidence introduced at trial); *Williams v. Donnelly*, 00 CV 4445, 00 CV 4447, 00 CV 4448, 2005 WL 2290592, *10 (E.D.N.Y. Apr. 12, 2005) (appealing "to the jury's sympathies in describing the victim of the crime as a "hard working man, who was trying to live the American dream" found

8

not be prosecutorial misconduct in light of curative instruction).

Even if the challenged statements were improper, they were harmless in light of the overwhelming evidence of petitioner's guilt. *See U.S. v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002) (no prosecutorial misconduct where "[t]he specific remarks at issue did not touch upon or bolster the most potent of the government's evidence."); *Bradley* 918 F.2d at 343 ("[t]he clear evidence of guilt demonstrates that Bradley was not prejudiced by the prosecutor's improper remarks.").

## III.    Conclusion

For the reasons set forth above, George Johnson's petition for a writ of habeas corpus is denied.

SO ORDERED.

DATED:    Brooklyn, New York
          March 13, 2007

                                    _____/s/_____
                                    DORA L. IRIZARRY
                                    United States District Judge